STATE OF NORTH CAROLINA v. CEPHUS DIXON McNEIL, NATHAN SYLVESTER WALLER, JAMES EUGENE WALLER, LARRY EUGENE LEAK, AND BOBBY WHITE FERRELL.

(Filed 15 January, 1965.)

**1. Constitutional Law § 32—**

A defendant charged with a felony is entitled to representation in the trial court in both the State and Federal jurisdictions, but such right does not justify the court in forcing counsel upon a defendant who wants none. Fourteenth Amendment to the Constitution of the United States.

**2. Same—**

An indigent defendant has no right to select his own counsel and must accept experienced and competent counsel appointed by the court in the absence of any substantial reason for replacement, and when a defendant states he does not want court appointed counsel after the court has made clear that the court would not appoint other counsel, he waives counsel. The mere fact that court appointed counsel had not prosecuted appeals from prior convictions of the defendant when defendant thought he should have done so is not ground for replacement.

**3. Same—**

It is not required that waiver of counsel be in writing. G.S. 15-4.1.

**4. Same—**

Speculation as to whether defendant would have been better off had he not discharged his court appointed counsel and represented himself is irrelevant to the question of whether he had voluntarily waived counsel by discharging his count appointed counsel.

**5. Criminal Law § 159—**

Exceptions and assignments of error not brought forward and discussed in the brief deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**6. Criminal Law § 71—**

The fact that a defendant who had voluntarily given himself up at police headquarters made a confession after he had been truthfully told by

a police officer that defendant had been implicated by others in the commission of the crime under investigation does not render the confession involuntary.

**7. Criminal Law § 48—**

Where defendant promptly denies an accusation of guilt the principle of an implied admission by silence does not come into play, and evidence of the circumstances of the accusation is incompetent.

APPEAL by defendants Cephus Dixon McNeil, James Eugene Waller, and Bobby White Ferrell from *Copeland, S. J.,* September 1964 Criminal Session of DURHAM.

Criminal prosecution on an indictment charging Cephus Dixon McNeil, Nathan Sylvester Waller, James Eugene Waller, Larry Eugene Leak, and Bobby White Ferrell on 15 March 1964 at and in Durham County with the robbery of Ben F. Green of $160 in cash money United States currency and of a pistol of the value of $185, all the property of Ben F. Green, by the use and threatened use of firearms, to wit, a sawed-off shotgun and pistol, whereby the life of Ben F. Green was endangered or threatened, a violation of G.S. 14-87.

When the case was called for trial, all the defendants were in court in their own proper persons and with their attorneys, all members of the Durham County Bar, and all apparently appointed by the court to represent them. Cephus Dixon McNeil was represented by Standish S. Howe; Nathan Sylvester Waller was represented by C. C. Malone, Jr.; James Eugene Waller was represented by R. Roy Mitchell, Jr.; Larry Eugene Leak was represented by W. G. Pearson, II; and Bobby White Ferrell was represented by W. Paul Pulley, Jr.

Before pleading to the indictment, Bobby White Ferrell stated to the court that he did not desire the services of W. Paul Pulley, Jr., the lawyer appointed for him by the court. Whereupon, the court, not in the presence of the panel of prospective jurors who had been summoned to the court to act as jurors, after due inquiry, found as a fact that W. Paul Pulley, Jr., is a graduate of the law school of the University of North Carolina and has practiced law at the Durham and Wake County Bars since that time, and is well qualified to practice law. Bobby White Ferrell, after making the above statement, signed under an oath a waiver of right to have counsel appointed for him. Whereupon, the court permitted Bobby White Ferrell to dismiss his court-appointed attorney, W. Paul Pulley, Jr.

Before pleading to the indictment, Cephus Dixon McNeil stated to the court that he did not desire the services of Standish S. Howe, the lawyer appointed for him by the court. Whereupon, the court, not in

the presence of the panel of prospective jurors who had been summoned to the court to act as jurors, after due inquiry, found as a fact that Standish S. Howe is a graduate of the Duke University law school, has been practicing law in this State for the last thirteen years, and is well qualified to practice law. Whereupon, the following colloquy took place between the court and Cephus Dixon McNeil:

"COURT: 'All right. Let me ask you a few questions. I take it you do not want a lawyer. Is that what you want?'

"DEFENDANT: 'I want one, but I don't want Mr. Howe.'

"COURT: 'Then, your position is that you had rather have nobody rather than Mr. Howe; is that correct?'

"DEFENDANT: 'Yes, sir. I tell you why. I am getting along and don't seem like the lawyer is doing me no good. He talks against me. I tell him what to say and he says other things.'

"COURT: 'You understand you are not an attorney?'

"DEFENDANT: 'Yes, sir.'

"COURT: 'You wish to discharge him?'

"DEFENDANT: 'Yes, sir.'

"COURT: 'Let the record so show, and the court hereby releases Mr. Howe as your attorney.' "

After this had occurred, all the defendants pleaded not guilty. While the jury was being selected, and before it had been empanelled, Nathan Sylvester Waller, *in propria persona,* and through his attorney, C. C. Malone, Jr., withdrew his plea of not guilty and tendered to the State a plea of *nolo contendere.* Whereupon, the court examined Nathan Sylvester Waller, who stated that the plea of *nolo contendere* was free and voluntary on his part, that he fully understood the consequences of his plea, and the punishment therefor, and that he still wished to enter a plea of *nolo contendere.* The State accepted his plea, and it was entered upon the minutes of the court.

After the jury had been selected and empanelled and during the presentation of the State's evidence, Larry Eugene Leak stated to the court *in propria persona* and through his attorney, W. G. Pearson, II, that he wished to change his plea from not guilty to *nolo contendere.* Whereupon, the court examined the defendant who stated that his plea of *nolo contendere* was made freely and voluntarily on his part without fear or compulsion from anyone, and that he fully understood the consequences of his plea. His plea of *nolo contendere* was accepted by the State and recorded in the minutes of the court.

The jury returned as their verdict that the defendants Cephus Dixon McNeil, James Eugene Waller, and Bobby White Ferrell are guilty as charged in the indictment.

From judgments of imprisonment imposed on each one of them, defendants McNeil, James Eugene Waller, and Bobby White Ferrell appeal to the Supreme Court.

*Attorney General T. W. Bruton and Assistant Attorney General Richard T. Sanders for the State.*
*Rudolph L. Edwards for defendant Cephus Dixon McNeil.*
*R. Roy Mitchell, Jr., for defendant James Eugene Waller.*
*Anthony M. Brannon for defendant Bobby White Ferrell.*

PARKER, J.  When McNeil appealed to the Supreme Court, Judge Copeland found that he was an indigent, and, pursuant to the provisions of G.S. 15-4.1, appointed Rudolph L. Edwards of the Durham County Bar to prosecute his appeal in the Supreme Court. When Bobby White Ferrell appealed to the Supreme Court, Judge Copeland found that he was an indigent, and, pursuant to the provisions of G.S. 15-4.1, appointed Anthony M. Brannon of the Durham County Bar to prosecute his appeal in the Supreme Court. Roy R. Mitchell, Jr., has continued his services as counsel for defendant James Eugene Waller in the prosecution of his appeal in the Supreme Court. The case on appeal and the briefs of attorneys for the three appealing defendants have been mimeographed at public expense in the same form as is done by any defendant in this State who is well able financially to prosecute his appeal.

The State's evidence shows these facts: Ben F. Green about 9:30 p.m. on Sunday, 15 March 1964, was preparing to close a grill he operated at 1201 Juniper Street in the city of Durham. He was alone. He turned off all the lights except one. His TV was on. Bobby White Ferrell knocked at the door. He paid him "no mind." There is no evidence Ferrell came in the grill or what door he knocked at. Two or three minutes later, he cut off the TV and the remaining light and went out the back door with his pistol in one hand and a pan of dog food in the other. When he got outside, he put his pistol in his pocket and turned round to lock the door. At that time two men, one of whom was Cephus Dixon McNeil, grabbed him from behind. While two men held him, McNeil ran in front of him in the light, and said: "Get his pocketbook, get his pocketbook," and grabbed his pistol. Then McNeil said, "make him hush hollering," and hit him once or twice with a pistol on the side of his head. He kept tussling and every time he whirled round,

McNeil pointed a pistol at him, and looked like he was trying to shoot him, but McNeil was scared he would shoot one of his companions. The men grabbed his pocketbook containing $160, his driver's license and receipts, and ran off. He had known NcNeil five or six years, knew his twin brother Clarence, and knew them apart. Three big lights made it bright as day, and McNeil was the one who held the pistol on him. He never told Lt. Haithcock of the Durham Police Force that Ferrell robbed him; he told him Ferrell was there.

The State called as its second witness detective A. L. Hight of the Durham Police Force. Over the objection and exception of Ferrell, the court permitted Hight to testify that defendant Leak, in the presence of two other detectives of the Durham Police Force and of defendant Ferrell and of Clarence McNeil, twin brother of defendant McNeil, made the following statement:

"Bobby White Ferrell was a lookout, that he, James Eugene Waller, Cephus McNeil and Nathan Waller waited for Mr. Green to close and come out, whereupon they grabbed and robbed him, with Nathan Waller carrying the sawed-off shotgun at this time. That James Eugene Waller was the one who took Mr. Green's pistol and when they left they went to Cephus McNeil's home to divide the money and that it was later that Bobby White Ferrell came to the house where he was given $5.00 for his part."

The court instructed the jury not to consider this statement against defendants McNeil and James Eugene Waller. The solicitor then asked Hight what Ferrell said about Leak's statement. Hight replied:

"Bobby Ferrell never made any comment to the statement except the fact that he denied it, and he told us that we were the detectives and we could find out the best way we could."

Then the solicitor asked Hight: "I ask you whether he ever denied it at that time?" Hight replied:

"No, sir. He never denied participating in them, but he was real hard to get along with, and he told us that we were the detectives, we could find out the best way we could about it."

Detective Hight then testified, without objection, that defendant McNeil on 1 May 1964 made the following statement in the interrogation room in the Police Department in the presence of another police detective:

"[H]e and Larry Leak and James Waller and Nathan Waller, along with Bobby Ferrell, robbed a colored man that operated Green Sport Shop on Juniper Street. Cephus stated to me that they got approximately $75 from the colored man. He stated that they divided the money between the four of them. He stated they each received 18 or 20 dollars each. Cephus said the boy they called 'Hero,' who is Bobby Ferrell.

\*          \*          \*

" 'Hero,' who is Bobby Ferrell, got $5.00 for his part in participating in this robbery. Cephus also stated to me and Lt. Haithcock that during this robbery they took a .32-caliber pistol that they had taken from a white man at another robbery in Raleigh, North Carolina. He stated they carried both of these guns with him at the time he went. He stated he kept both these guns in his room in New York City until he found out the FBI was looking for him and when he heard that they were looking for him he took both of the guns and threw them in the River near the Brooklyn Bridge and he stated he had not seen the guns since this time, and he was arrested in New York City and brought back.

\*          \*          \*

"He stated that he didn't, didn't mind confessing to what he had done, that he didn't mind talking to us about it, but that he would rather not sign anything."

After all the statement had been admitted without objection, defendant McNeil objected to it. Judge Copeland instructed the jury that they should not consider defendant McNeil's statement against the other defendants.

Detective Hight further testified that defendant James Eugene Waller on 7 May 1964 voluntarily came to the Durham Police Headquarters, and voluntarily gave himself up. Hight told him he had been implicated in these robberies by other persons who participated in these robberies, and did he want to make any statement in reference to these robberies he had been implicated in. Hight said he took a few notes as Waller spoke, and these were not signed by Waller. The record then states: "After more discussion the Court found the 'confession' voluntary and to this the defendant James Eugene Waller excepts and assigns as error No. 1." The record is as bare of what the "more discussion" was as old Mother Hubbard's cupboard, when she went to it "to get her poor dog a bone." Judge Copeland instructed the jury that they should not consider Waller's statement against the other

defendants, but consider it against Waller alone. Hight then testified that Waller said in effect that he, Larry Leak, Nathan Waller, Cephus McNeil, and Bobby White Ferrell went to the Green Sport Shop, waited for a while, robbed Mr. Green as he closed, left and then went to Cephus McNeil's house to divide the money.

After Hight had testified, defendant McNeil recalled him for further cross-examination. He testified in substance: They found the shotgun introduced in evidence underneath the garage immediately back of defendant McNeil's house. The informant said it was there, and they went there and found it.

### CEPHUS DIXON McNEIL'S APPEAL

McNeil's first assignment of error is that the trial court did not appoint counsel to represent him at his trial after he had discharged his previously court-appointed counsel, Standish S. Howe.

McNeil was charged in the indictment with the commission of a serious felony in a State court. By virtue of the Fourteenth Amendment to the United States Constitution, he was entitled to representation in the trial court. *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 93 A.L.R. 2d 733.

Before his trial the superior court judge, recognizing McNeil's constitutional right and acting under the provisions of G.S. 15-4.1, appointed Standish S. Howe of the Durham County Bar to represent him in the trial court. Howe, according to the unchallenged findings of fact of Judge Copeland, is a graduate of the law school of Duke University, has practiced his profession for the last thirteen years, and is a well-qualified lawyer. In defendant McNeil's brief it is stated that Standish S. Howe's professional competency is not challenged.

Before pleading to the indictment McNeil stated to the court that he did not want Mr. Howe as his lawyer, that he wanted a lawyer, but he did not want Mr. Howe, that he had rather have nobody than have Mr. Howe, that he wanted to discharge him. McNeil stated the reason he did not want Mr. Howe as follows: "I am getting along and don't seem like the lawyer is doing me no good. He talks against me. I tell him what to say and he says other things."

Before the instant case was argued in the Supreme Court, Rudolph L. Edwards, attorney for defendant McNeil, filed in the Supreme Court a motion suggesting a diminution of the record in order to add thereto an affidavit of Standish S. Howe, McNeil's discharged court-appointed lawyer, and attached to the motion the affidavit. The Attorney General of North Carolina did not resist it, and this Court allowed the motion. Standish S. Howe's sworn affidavit states in sub-

stance, except when quoted: He represented the defendant McNeil in two criminal trials in the Durham County superior court. In one of these cases defendant McNeil was tried with four other defendants for armed robbery on 24 March 1964, was convicted and received a sentence of from 20 to 30 years. In the other case he was convicted of common law robbery on 6 December 1963 and received a sentence of not less than 2 nor more than 10 years. Before the trial of the instant case began, McNeil informed him that he did not want him as his counsel. This was brought to the attention of Judge Copeland. Judge Copeland took McNeil, Howe, and the court reporter into his chambers. Judge Copeland asked McNeil if he wanted court-appointed counsel. McNeil said he did not want Howe as his counsel. Judge Copeland advised McNeil that he must accept the lawyer appointed by the court or have no lawyer at all. McNeil repeated that he did not want Howe as his lawyer. The judge then entered an order dismissing Howe as McNeil's attorney. In the instant trial there were five defendants. He had conferred with W. G. Pearson and C. C. Malone, court-appointed attorneys for two of the defendants. "We wanted to stop these trials if we could, because the defendants had something like 15 different bills of indictment against them, and it appeared that every time the State tried the defendants and obtained a conviction against them, the State was ready to try them again on another offense, and the sentences might be tacked on to each other." Pearson and Malone were able to get their clients, Larry Eugene Leak and Nathan Sylvester Waller, to plead *nolo contendere,* and they received 10 to 20 years concurrent sentences. If McNeil had not discharged him, he would have advised that he plead *nolo contendere* with the hope of a concurrent sentence and that there would be a stop to these trials. McNeil pleaded not guilty and received a sentence of 15 to 25 years to run at the expiration of sentences he was serving, and the court recommended that he be confined in a maximum security prison unit. He did not perfect appeals to the Supreme Court that McNeil thought he should have, and this was the basis of the dissatisfaction between them. He told McNeil if he did not want him as his lawyer to tell the judge about it, and perhaps the judge would appoint another lawyer to represent him. If McNeil had kept him as his lawyer, and if he had followed his advice to plead *nolo contendere* as Pearson's and Malone's clients did, he might have received a lighter sentence.

The trial court permitted McNeil to discharge Howe as his lawyer, and he went to trial without a lawyer.

The United States Constitution does not deny to a defendant the right to defend himself. Nor does the constitutional right to assistance

of counsel justify forcing counsel upon a defendant in a criminal action who wants none. *Moore v. Michigan,* 355 U.S. 155, 2 L. Ed. 2d 167; *Carter v. Illinois,* 329 U.S. 173, 91 L. Ed. 172; *United States v. Johnson,* 6 Cir. (June 1964), 333 F. 2d 1004.

In *Johnson v. United States,* 8 Cir., 318 F. 2d 855, *cert. den.* 375 U.S. 987, 11 L. Ed. 2d 474, the Court said:

> "It is equally well settled that a defendant charged with a federal crime may waive his right to representation by counsel 'if he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 241-242, 87 L. Ed. 268; *Johnson v. Zerbst,* 304 U.S. 458, 468-69, 58 S. Ct. 1019, 82 L. Ed. 1461; *Hayes v. United States,* 8 Cir., 296 F. 2d 657, 668; *Lipscomb v. United States,* 8 Cir., 209 F. 2d 831, 834; *Glenn v. United States,* 5 Cir., 303 F. 2d 536, 540; *Igo v. United States,* 10 Cir., 303 F. 2d 317, 318; *Arellanes v. United States,* 9 Cir., 302 F. 2d 603, 610; *Watts v. United States,* 9 Cir., 273 F. 2d 10, 12."

We think this statement is equally true of a defendant charged with crime in a state court.

The facts in the *Johnson* case, 318 F. 2d 855, are helpful here. Johnson was charged with a federal offense. The trial court appointed Mr. Joseph L. Flynn, a competent, experienced and able trial attorney of the Missouri Bar, to represent him in his trial. Mr. Flynn stated to the court in substance that Johnson did not want him to represent him, that he wanted to represent himself, that he had told Johnson what he considered the law to be, and by reason thereof he preferred to represent himself. The judge said to Johnson: "You say you do not want Mr. Flynn to represent you?" Johnson replied: "No, sir, he has had six months and he has done nothing. * * * I believe Mr. Flynn would do it the best he could, but he doesn't understand the points that I want." The judge replied in part: "The Court has appointed a lawyer for you and a good lawyer. If you do not want this lawyer to represent you, you have a perfect right to try your own case, but I am not going to appoint another lawyer for you." Johnson said: "Well, I would like to see that my constitutional rights —." The judge interrupted him saying "I have done all I can do for you. I am not going to appoint another lawyer. If you want Mr. Flynn to withdraw, all right, but I am not going to appoint another lawyer." Johnson, after further colloquy, said he did not want Mr. Flynn to represent him. Johnson went to trial without counsel, was found guilty by a jury, and receiv-

ed a prison sentence consecutive with a prison sentence he was serving. The Court said:

> "Defendant was fully informed as to the court's view that Mr. Flynn was in a position to competently represent the defendant and that if defendant insisted on Mr. Flynn's release, no other attorney would be appointed to represent him. With such knowledge defendant unequivocally informed the court that he insisted upon Mr. Flynn's release.

> \*        \*        \*

> "The trial court committed no error in determining defendant has waived his constitutional right to be represented by counsel."

In *Campbell v. State of Maryland* (1963), 231 Md. 21, 188 A. 2d 282, defendant was convicted in the criminal court of Baltimore of armed robbery and carrying a deadly weapon, and appealed. Prior to his trial appellant requested the court to appoint another lawyer for him in lieu of his court-appointed counsel. When asked whether there was a good reason for a change of lawyers, he replied: "That is all right." He assigned as error the refusal of his request. The Court in a *per curiam* opinion said:

> "He now claims error in the refusal of his request. In the absence of any substantial reason for replacement of counsel (none was advanced here), an indigent defendant must accept counsel appointed by the court, unless he desires to present his own defense. *Brown v. United States*, 105 U.S. App. D.C. 77, 264, F. 2d 363, 367; *cf. Murray v. Director*, 228 Md. 658, 660, 179 A. 2d 878. But even if the question raised had any merit, it was plainly waived by appellant."

In *People v. Terry* (1964), 36 Cal. Rptr. 722, defendant was convicted in the superior court of petty theft and appealed. The District Court of Appeal held that where the trial court made it clear that defendent must choose between representation by his court-appointed counsel or by himself, when he expressed an unfounded dissatisfaction with his court-appointed lawyer merely because the court-appointed lawyer wanted him to plead guilty of something he was not guilty of, and defendant in at least three statements made it clear that he elected to defend himself, defendant properly waived the right of counsel at his trial.

In 157 A.L.R. 1225 *et seq.*, there is an annotation entitled "Right of defendant in criminal case to discharge of, or substitution of other

counsel for, attorney appointed by court to represent him." Therein it is said:

> "The right to such discharge or substitution is to this extent relative, and the authorities seem united in the view that if there is fair representation by competent assigned counsel, proceeding according to his best judgment and the usually accepted canons of criminal trial practice, no right of the defendant is violated by refusal to accede to his personal desire in the matter."

Mr. Howe, court-appointed lawyer for McNeil, is a well-qualified lawyer, and admitted to be such in McNeil's brief. When McNeil informed Judge Copeland that he wanted to discharge him as his attorney, Judge Copeland made it absolutely clear to him that he must have Howe as his lawyer in his trial or have no lawyer at all. After the judge's statement, McNeil said he did not want Howe as his lawyer, that he wanted to discharge him, that he wanted a lawyer but he did not want Howe. It is common knowledge of the Bench and Bar, who are engaged in criminal trials, that not infrequently convicted criminal offenders sentenced to prison have no good opinion of the services of their lawyers who defended them. It is also generally known to Bench and Bar that defendants, who have had extensive experience in the courts, as the record shows McNeil has had, think they should tell their lawyers what to say, and their lawyers do not say it, because to do so would ruin the defendants. There is no evidence before us that McNeil, in his two former trials referred to in Howe's affidavit, told the trial judge in those cases he wanted to appeal. Competent and experienced lawyers do not advise an appeal when they are confident there is no error in the trial. The mere fact that Howe did not appeal those two cases, when McNeil thought he should have an appeal, does not militate against Howe's professional competency to have defended him properly in the instant case. An indigent defendant in a criminal action, in the absence of statute, has no right to select counsel of his own choice to defend him, and we have no statute in North Carolina that gives him the right to select counsel. In the absence of any substantial reason for replacement of court-appointed counsel, an indigent defendant must accept counsel appointed by the court, unless he desires to present his own defense. McNeil, according to the record before us, had had experience before as a defendant in criminal trials. In the instant case we think McNeil had no substantial reason to have the court appoint another lawyer to represent him in the trial, when he had discharged Howe, after having been unequivocally told by Judge Copeland that if he discharged Howe he would not appoint another lawyer

to represent him, and that in discharging Howe he knew what he was doing and understandingly waived his constitutional right to have counsel. His counsel insists he did not waive the assistance of counsel, because he did not sign a written waiver. G.S. 15-4.1 states a "defendant may waive the right to counsel in all cases except a capital felony by a written waiver executed by the defendant * * *." The statute does not say he must sign a written waiver. Unquestionably in a criminal action a defendant can waive his right to counsel in North Carolina without signing a written waiver. Howe's statement in his affidavit to the effect that if McNeil had kept him as his lawyer, and if he had followed his advice to plead *nolo contendere,* as Pearson's and Malone's clients did, he might have received a lighter sentence, is pure speculation. If he had continued as his counsel, there is nothing to suggest that McNeil would have accepted his advice and entered a plea of *nolo contendere.* The record shows that Ferrell, who discharged his lawyer, represented himself, and pleaded not guilty, received the same sentence as the defendants represented by Pearson and Malone. It is probable that McNeil received a heavier sentence because, after his conviction, the State offered evidence of his prior criminal record, which it would seem from the judge's sentence was worse than that of McNeil's codefendants.

Defendant McNeil's other two assignments of error brought forward and discussed in his brief are overruled. They are without merit, present no new question, and require no discussion.

McNeil's assignments of error in the record, which have not been brought forward and discussed in his brief, are taken as abandoned by him. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810.

In McNeil's trial we find no error.

## JAMES EUGENE WALLER'S APPEAL

James Eugene Waller states in his brief that the only question presented by him is whether his confession was voluntary as a matter of law, and "if this Court finds that the confession obtained by this defendant appellant was free and voluntary, then his conviction must stand." This appellant relies upon *S. v. Anderson,* 208 N.C. 771, 182 S.E. 643, which is patently distinguishable. In the *Anderson* case it was held the confession was not competent, because it appeared from the testimony of a State witness that the confession was obtained by falsely telling the confessor that his codefendants had talked, and that he had better confess. Here appellant Waller on 7 May 1964 voluntarily came to Durham Police Headquarters and gave himself up.

Hight told him he had been implicated in these robberies by other persons who participated in these robberies, and did he want to make any statement in reference to these robberies he had been implicated in. There is not a scintilla of evidence in the record that such statement by Hight was false: in fact the record affirmatively shows the statement was true, because Leak and McNeil on 1 May 1964 had previously implicated appellant Waller. After this statement, appellant Waller made a confession. It appears from the record it was made freely and voluntarily. There is no evidence to the contrary. It was competent and properly admitted in evidence against him. In his trial we find no error.

### BOBBY WHITE FERRELL'S APPEAL

Ferrell assigns as error the admission in evidence against him, over his objection and exception, of the extra-judicial confession of defendant Leak incriminating him, as above set forth. When the statement was made, detective Hight testified Ferrell promptly denied it. All this amounts to is an accusation by Leak, which Ferrell promptly denied. Under such circumstances the principle of admission by silence does not come into play. It is true detective Hight then testified Ferrell "never denied participating in them [the robberies]." This later statement of Hight is obscure, but it seems by Hight's use of the word "them" he was referring to other robberies McNeil and the other codefendants of Ferrell had stated to him that all of the defendants in this case were implicated in. We are fortified in our opinion by the statement in the affidavit of Standish S. Howe, above set forth, which states in part: "We wanted to stop these trials if we could, because the defendants had something like 15 different bills of indictment against them." We think Leak's extra-judicial confession incriminating Ferrell under the circumstances here was not competent in evidence against Ferrell, and its admission was error, *S. v. Herring,* 200 N.C. 308, 156 S.E. 538; *S. v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186, which entitles him to a new trial.

The result reached is this: In McNeil's case, no error; in James Eugene Waller's case, no error; in Ferrell's case, new trial.