STATE OF NORTH CAROLINA v. JEROME ROBINSON

No. 42

(Filed 14 May 1976)

1. **Constitutional Law § 32— indigent defendant — right to court-appointed counsel**

   An indigent defendant was entitled to representation by counsel at his trial and it was the duty of the trial court to appoint competent counsel so to represent him, unless the defendant voluntarily and understandingly waived his right thereto.

2. **Constitutional Law § 32— right to conduct own defense**

   A defendant charged with a criminal offense has the right, if he so elects, to conduct his own defense without counsel.

3. **Constitutional Law § 32— indigent defendant — effective assistance of counsel**

   The right of an indigent criminal defendant to have counsel appointed to represent him at his trial is intended to guarantee effective assistance of counsel, but it is not a right to have the attorney of his choice appointed to represent him.

4. **Constitutional Law § 32— indigent defendant — dissatisfaction with counsel — appointment of other counsel**

   The constitutional right of an indigent defendant to have the effective assistance of competent counsel appointed by the court does not include the right to insist that competent counsel, so assigned and so assisting him, be removed and replaced with other counsel merely because the defendant has become dissatisfied with his services.

5. **Constitutional Law § 32— disagreement with counsel as to trial tactics — replacement of counsel**

A mere disagreement between the defendant and his court-appointed counsel as to trial tactics is not sufficient to require the trial court to replace the court-appointed counsel with another attorney.

6. **Constitutional Law § 32— counsel's refusal to present perjured testimony — motion for appointment of another attorney — discretion of court**

Discord between defendant and his court-appointed trial counsel because of counsel's refusal to be a party to the introduction of what he reasonably believed to be prejured testimony did not require the trial court to replace such counsel with another attorney; under these circumstances, the appointment of another attorney rested in the sound discretion of the trial court, and the court did not abuse its discretion in the denial of defendant's motion for the appointment of another counsel.

7. **Constitutional Law § 32— discord between defendant and counsel — leaving counsel in charge of portion of trial — denial of fair trial**

Where discord developed between defendant and his court-appointed counsel because of counsel's refusal to be a party to the introduction of what he believed to be perjured testimony by defendant and his witness, and defendant repeatedly stated to the court that he did not wish to have such counsel continue to represent him at his trial, defendant was deprived of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States and Art. I, § 19 of the Constitution of North Carolina when the court left such counsel in charge of a portion of the trial while relieving him of responsibility for questioning defendant's only witness or defendant, himself, if he elected to testify, as a result of which counsel began the questioning of defendant's only witness and then fell silent, leaving defendant to take over the direct examination, since such procedure must have conveyed to the jury the impression that defendant's counsel attached little significance or credibility to the testimony of the witness, or that defendant and his counsel were at odds.

APPEAL by defendant from the Court of Appeals which found no error upon the defendant's appeal to it from *Kirby, J.,* at the 10 March 1975 Special Criminal Session of MECKLENBURG, the opinion of the Court of Appeals being reported in 28 N.C. App. 65, 220 S.E. 2d 387 (1975).

Upon an indictment, proper in form, the defendant was found guilty of felonious breaking and entering and of larceny after having feloniously broken and entered a building occupied by Walker's Drugstore at 229 Hawthorne Lane, Charlotte, North Carolina. He was sentenced to ten years on the breaking and entering charge and three to five years on the larceny

State v. Robinson

charge, the sentences to be served consecutively. The evidence for the State, if true, is ample to support each conviction. The sole question presented to the Court of Appeals and to this Court is:

"Did the trial judge deny the defendant his constitutional right to effective assistance of counsel when he denied the defendant's motion to allow his court-appointed counsel to withdraw and refused to appoint substitute counsel?"

Prior to the defendant's pleading to the indictment, William F. Burns, Jr., court-appointed counsel for the defendant, made a motion, at the request of the defendant and in his own behalf, that he be permitted to withdraw as counsel for the defendant. In support of the motion, Mr. Burns stated to the court:

"The defendant has indicated to me he wishes to take the witness stand in his own behalf; which, in my opinion, is perjured testimony. He has indicated he intends to call a witness to the witness stand and elicit testimony which would be perjured testimony to that individual; and I feel that on the basis of that, substantial conflict has arisen between the defendant and myself which would prevent me from devoting my full effort to his representation in this matter; and in addition to that, I don't feel that I should participate in the matter any further because of the foregoing; and I do respectfully request that I be allowed to withdraw as counsel for the defendant."

The said motion and statement were made in the absence of prospective jurors and all subsequent remarks, hereinafter set forth, were also made in the absence of prospective jurors and in the absence of the jury selected and impaneled.

Upon the making of this motion and statement by Mr. Burns, the court interrogated the defendant who stated to the court that Mr. Burns had expressed these views to him, including the opinion of Mr. Burns that the proposed testimony would constitute perjury and the unwillingness of Mr. Burns to participate in "what he believes to be" a fraud upon the court. Thereupon, the court said to the defendant:

"I'm going to tell you just as straight as I know how to tell you—I'm not going to appoint any lawyer to sit

with you in a case which is, in that counsel's opinion, perjury testimony. If you want to represent yourself and present perjury testimony, for whatever it's worth, to a jury; I'll allow counsel to sit with you and just tell you what's going on; but I don't think there's a lawyer at this Bar that I know about, who would knowingly and wilfully present a witness whom he believed to be perjuring himself and present it to the jury as the truth. And I don't think it would be fair to him for me to impose that responsibility on any attorney. So, if you want an attorney to represent you, and you want to take his advice, you've got one. If you want somebody just to sit there at the table to tell you what's happening next, I'll be glad to give you that kind of counsel. But I'm not going to impose the responsibility on any lawyer to sit in the courtroom and present to the jury and to the judge evidence which he does not believe is truthful, or perhaps that which he knows is untruthful. If you want to employ one, you might find one that you could convince that that would be a proper procedure; but I'm certainly not going to appoint one for that type procedure. Do you understand that?"

The defendant replied that he did understand this statement by the court and requested the court to appoint an attorney to represent him.

At this stage the prosecuting attorney informed the court that, in his opinion, the defendant was simply trying to delay the trial with which the State was ready to proceed.

Thereupon, the court announced it would withhold its final ruling until the following day but proceeded to say to the defendant:

"I'm telling you now, that the only kind of an attorney, the only responsibility I'm going to impose on any lawyer, in your defense who, in his own mind, believes that you're going to go on this witness stand and present perjured testimony, is to instruct him to sit at this table and tell you who I am, and let him pick the jury; and then you can defend yourself of [sic] perjured testimony if you want to; but I'm not going to ask a lawyer to; I'll let Mr. Burns sit by you and pick a jury, examine the State's witnesses in your behalf; but when it comes to your defense, if you're going to offer perjured testimony, I'm going to

let Mr. Burns sit there silently and ask you nothing. When you come on the witness stand, you're on your own. And I want to put in the record outside of the hearing of the jury impaneled to try you that in the opinion of your attorney you were offering perjured testimony, and he wanted no part of it, and I did not insist that he participate; that you are testifying against his will to evidence which he believes perjury; and if the jury convicts you, heaven help your soul—and your witness's too."

The court then instructed the defendant to think about the matter overnight, advising him to talk to his lawyer and to listen to him.

The next day, the defendant entered a plea of not guilty to each charge and, through his counsel, Mr. Burns, renewed his motion to have another attorney appointed to represent him, Mr. Burns making that motion in behalf of the defendant and in his own behalf. The court denied the motion, to which ruling the defendant excepted. The trial then proceeded. The State introduced the testimony ·of a number of witnesses, each of whom Mr. Burns, as counsel for the defendant, cross-examined. At the conclusion of the direct examination of the first witness for the State, and prior to cross-examination, Mr. Burns requested the court to permit the defendant to make for the record a statement in the absence of the jury. The jury having been sent from the courtroom, the following exchange between the defendant and the court took place:

"DEFENDANT: I would like to have another attorney.

"THE COURT: I'm not going to appoint you another attorney. I have already made that eminently clear to you.

"DEFENDANT: I don't want Mr. Burns to defend me.

"THE COURT: You have had since November 1973, or shortly thereafter, to employ any counsel you want to represent you. Mr. Burns was appointed by the Court to represent you; and I told you yesterday my reasons, and I'm going to stand by those reasons and have Mr. Burns examine this witness or any other witness; or I'll let you ask him some questions, if you wish.

"DEFENDANT: I'd like to have another attorney, because he's not going to put in any evidence in the case.

State v. Robinson

"THE COURT: He's not going to put in evidence which he believes to perjure [sic] testimony based upon—

"DEFENDANT: What he believes to be perjury.

"THE COURT: Sit down. Sit down. He's your attorney. He's conducting your defense until I rule otherwise, and I haven't ruled otherwise. Bring the jury back."

To the foregoing ruling the defendant excepted. Subsequently, while the State was still putting on its witnesses, the jury was again sent from the courtroom and the following exchange between the defendant and the court occurred:

"DEFENDANT: I want my attorney to be dismissed from the case.

"THE COURT: I am not going to do that. I've already told you that about fourteen times. Mr. Burns is doing all he can to properly represent you. * * * I don't know what other question relative to your defense Mr. Burns could have asked; and I've been sitting here listening; and I'm not going to discharge Mr. Burns just to accommodate you in delaying this trial. * * *

"DEFENDANT: I don't think he's in my defense.

"THE COURT: What can he say when two witnesses saw you come out the door, were apprehended at the scene, and apprehended with the bag. You don't offer him much to defend you with. I don't know what else he could do.

"DEFENDANT: But what they're saying is wrong.

"THE COURT: Well, my friend, that's for that jury, and he can't tell those officers what to say. He can't change what they're going to say on direct examination.

"DEFENDANT: I understand that.

"THE COURT: And he certainly asked every relevant question that doesn't reach the point of ridiculous. He's not going to sit there and make a fool of himself.

"DEFENDANT: I understand that; but he's also explained to me how far he'll go on my case.

"THE COURT: He has done what?

"DEFENDANT: He has explained to me how far he will go in my defense.

State v. Robinson

"THE COURT: He's explained to you that he will not participate in your coming on this witness stand and perjure yourself when you told him that's what you were going to do. That's what he told you.

"DEFENDANT: No, that's not what he told me.

"THE COURT: Well, he'll get to that. Is there anything else you want to say? * * * This individual attorney has already represented you once and it ended in mistrial. [A previous trial of the same case.] That was a major feat, I'd say. Do you have anything else? I don't know any lawyer who would know any more about the facts or the relative facts about what he should or should not ask. He convinced one person on the jury to go with you. Sit down. That's all."

At the conclusion of the State's evidence, the defendant, through his counsel, Mr. Burns, moved for a judgment of nonsuit, which motion was denied. Thereupon, in the absence of the jury, the court asked the defendant if he desired to take the witness stand. The defendant replied that he did not but he had a witness, Carolyn Bertha, whom he wished to call, she being in the courtroom. Thereupon, Mr. Burns advised the court that this was one of the witnesses referred to in the previous remarks of Mr. Burns to the court. He further advised the court as follows:

"MR. BURNS: My position about the witness is, simply, that I do not wish to examine nor cross-examine in favor of her testimony to the jury for the reason that I have been advised that the testimony will be perjury.

"THE COURT: Who advised you of that fact?

"MR. BURNS: The defendant advised me.

"THE COURT: So, it is your firm belief based upon your investigation of this case that the witness who is about to be called will give testimony which is perjury?

"MR. BURNS: Yes, and the basis of my position is also supported by what the witness told me earlier on previous occasions.

* * *

"THE COURT: This is not based necessarily on what your client has told you, but the witness, herself.

"MR. BURNS: On both what my client has told me and what the witness has told me of her knowledge.

"THE COURT: And you think that whatever she testifies will be perjury?

"MR. BURNS: I think there's a distinct possibility of it.

"THE COURT: I'm going to allow you to call the witness, identify her by name and address, and you can tell her to say whatever she wants to say about it and you won't have to ask her any questions about it. The Court takes the position, for the record, that a duly licensed attorney is bound by certain ethics, and is also an officer of the Court; and in that capacity he is not to be allowed, even though he is bound to represent a client to the best of his ability, that the ethics don't require him to offer to the Court testimony which he believes to be perjury; or, as an officer of the Court, to knowingly or even by suspicion practice fraud; and the Court, at the outset of this trial advised counsel that the Court would not require him to participate in what he, counsel, believed to be perjury or fraud; that he wanted to disassociate himself from the testimony if it were offered; and the Court, therefore, concludes that although the attorney has a duty to represent his client, that the duty doesn't extend so far as to require him to offer testimony which he believes to be untruthful, and therefore, perjury.

"MR. BURNS: I think the defendant wishes to address the Court again at this time.

"THE COURT: One more time.

"THE DEFENDANT: I never said to Mr. Burns that the witness lied, were coming in to commit perjury. I never made this statement.

"THE COURT: He says the witness, herself, has indicated that. Bring the jury back."

Carolyn Bertha was, thereupon, called to the stand as a witness for the defendant. Preliminary questions were directed to her by Mr. Burns. After narrating briefly the activities of herself and her companions, including the defendant, during the evening preceding the alleged robbery and their arrival in the vicinity of the store alleged to have been broken and entered,

the witness asked, "You want me just to tell what happened?" Mr. Burns replied, "Tell what you would like to tell." The witness said she did not understand. Thereupon, the court stated: "Ma'am, just tell the truth—whatever you know. You were called as the defendant's witness. The defendant wanted you called. Go ahead and tell what it is you know." Thereupon, the witness testified that she was arrested, along with her companions, and taken to jail and charged with store breaking, that she was in the car in which she and her companions had been riding, in front of the drugstore, "and, that's about all."

Thereupon, the defendant, himself, took over the direct examination of this witness. She then testified: She did not know what happened in the drugstore, she being out in the car; the defendant had driven the car to the drugstore; one of their male companions got out of the car; about 15 minutes thereafter the defendant left the car in response to the witness' having directed him to go and get their companion; the witness does not know what the defendant did after he got out of the car; thereafter, the witness instructed another male companion to go and get the defendant; some 10 minutes later the police arrived and the entire group was arrested and charged with store breaking.

The defendant's evidence having thus concluded, the defendant renewed his motion for judgment of nonsuit, which was denied.

Upon appeal the defendant has been represented in the Court of Appeals and in this Court by another court-appointed counsel, Peter H. Gerns.

*Rufus L. Edmisten, Attorney General, by Alan S. Hirsch, Associate Attorney, for the State.*

*Peter H. Gerns for defendant.*

LAKE, Justice.

**[1, 2]** The defendant, an indigent, was entitled to representation by counsel at his trial and it was the duty of the trial court to appoint competent counsel so to represent him, unless the defendant voluntarily and understandingly waived his right thereto. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963). Conversely, a defendant, so charged with a criminal offense, has the right, if he so elects, to conduct his

own defense without counsel. The services of counsel unsatisfactory to him may not be forced upon him. *State v. Alston,* 272 N.C. 278, 158 S.E. 2d 52 (1967) ; *State v. Morgan,* 272 N.C. 97, 157 S.E. 2d 606 (1967) ; *State v. Elliott,* 269 N.C. 683, 153 S.E. 2d 330 (1967) ; *State v. McNeil,* 263 N.C. 260, 139 S.E. 2d 667 (1964).

[3]   The right of an indigent defendant charged with a criminal offense to have counsel appointed to represent him at his trial is not "an empty formality but is intended to guarantee effective assistance of counsel." *State v. Sneed,* 284 N.C. 606, 201 S.E. 2d 867 (1974). It is not, however, a right to have the attorney of his choice appointed to represent him.

In *State v. McNeil, supra,* counsel was appointed to represent the defendant at his trial. As in the present case, McNeil informed the court that he wanted a lawyer to represent him but did not wish to be represented by his appointed counsel, his reason being that, in his opinion, the lawyer was "doing me no good." In support of this position, he said, "He talks against me; I tell him what to say and he says other things." The trial court informed the defendant that his court-appointed counsel was found by the court to be well qualified, but if the defendant would prefer to have no one rather than his court-appointed counsel, the court would release the court-appointed counsel. This was done and the defendant conducted his trial himself with disastrous results. Upon appeal this Court, speaking through Justice Parker, later Chief Justice, said:

> "The United States Constitution does not deny to a defendant the right to defend himself. Nor does the constitutional right to assistance of counsel justify forcing counsel upon a defendant in a criminal action who wants none. * * *

> "An indigent defendant in a criminal action, in the absence of statute, has no right to select counsel of his own choice to defend him, and we have no statute in North Carolina that gives him the right to select counsel. In the absence of any substantial reason for replacement of court-appointed counsel, an indigent defendant must accept counsel appointed by the court, unless he desires to present his own defense."

[4]   The constitutional right of an indigent defendant in a criminal action to have the effective assistance of competent

counsel, appointed by the court to represent him, does not include the right to insist that competent counsel, so assigned and so assisting him, be removed and replaced with other counsel merely because the defendant has become dissatisfied with his services. In *State v. Sneed, supra,* speaking through Justice Branch, this Court said:

> "[I]ncompetency * * * of counsel for the defendant in a criminal prosecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice."

**[5]**   A mere disagreement between the defendant and his court-appointed counsel as to trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney. Trial counsel, whether court-appointed or privately employed, is not the mere lackey or "mouthpiece" of his client. He is in charge of and has the responsibility for the conduct of the trial, including the selection of witnesses to be called to the stand on behalf of his client and the interrogation of them. He is an officer of the court and owes duties to it as well as to his client. In this there is no conflict of interest. Clearly, the client has no right to insist that counsel assist him by presenting in evidence testimony which counsel knows, or reasonably believes, constitutes perjury. This was the sole basis for the discord between the defendant and his court-appointed trial counsel, Mr. Burns. Mr. Burns' refusal to be a party to the introduction of what he reasonably believed to be perjured testimony and his action in bringing this to the attention of the trial court was commendable, not basis for his removal as a disloyal counsel.

**[6]**   The existence of such a conflict of wills between the defendant and his court-appointed counsel did not require the trial court to replace such counsel with another attorney. Under these circumstances, the appointment of another attorney rested in the sound discretion of the trial court and we find in this record no indication of abuse of that discretion. See: *United States v. Young,* 482 F. 2d 993 (5th Cir., 1973). There was, therefore, no error in the denial of the defendant's motion for the appointment of another counsel.

The record does, however, show clearly that an irreconcilable conflict had arisen between the defendant and his court-

State v. Robinson

appointed counsel, and the defendant repeatedly stated to the court that he did not wish to have Mr. Burns continue to represent him at his trial. Though the defendant's dissatisfaction with his court-appointed counsel appeared to the trial court, and appears to us, to have been completely unjustified, the defendant was entitled to try his case without the presence of Mr. Burns at the counsel table, if he so desired. *State v. McNeil, supra.* Upon the defendant's advising the court that he did not desire to be represented at his trial by Mr. Burns, the trial court, having found there was no other basis for removing Mr. Burns, could properly have advised the defendant that if the defendant insisted thereon, the court would relieve Mr. Burns from his assignment but would not appoint another counsel to represent the defendant at the trial. Instead of doing this, the trial court, in an obvious effort to afford the defendant assistance which circumstances indicated the defendant needed, adopted a middle course.

[7] The court did not relieve Mr. Burns from his assignment, but left him in charge of a portion of the trial while relieving him of responsibility for questioning the witness called by the defendant and of assisting the defendant, himself, to present his own testimony if the defendant elected to take the stand. As a result of this procedure, Mr. Burns began the questioning of the defendant's only witness and then fell silent, leaving the defendant to take over the direct examination, Mr. Burns remaining seated at the counsel table. This procedure could hardly have failed to convey to the jury the impression that the defendant's counsel attached little significance or credibility to the testimony of the witness, or that the defendant and his counsel were at odds. Prejudice to the defendant's case by this trial tactic was inevitable.

For this reason, we conclude that the defendant has been denied the fair trial which is required by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and the comparable provision in the Constitution of North Carolina, Art. I, § 19. The defendant must, therefore, be awarded a new trial. At such new trial, we assume that he will be represented by his present counsel, appointed by the court to represent him upon his appeal. If not, the trial court should appoint competent counsel, selected by the court not by the defendant, to represent him and, if such counsel is not

acceptable to the defendant, permit the defendant to conduct his own trial without counsel.

New trial.