STATE OF NORTH CAROLINA v. ROBERT LEE THACKER

No. 8

(Filed 4 November 1980)

1. **Constitutional Law § 46– court appointed counsel – conflict with defendant over trial tactics - no right to substitute counsel**

Defendant did not have the constitutional right to have substitute counsel appointed to represent him after his motion to dismiss original counsel was granted because of a disagreement over trial tactics, since the record disclosed no reason for the trial court to have doubted defendant's counsel's competency as an advocate or to have suspected that the relationship between the two had deteriorated to such an extent that the presentation of defendant's defense would be prejudiced so as to require the appointment of new counsel.

2. **Constitutional Law § 46– conflict between defendant and counsel – request for substitute counsel – extent of inquiry required**

When faced with a claim of conflict between defendant and his court appointed counsel and a request for appointment of substitute counsel, the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective, and the trial court in this case was not required to make an in-depth inquiry or detailed findings of fact.

3. **Constitutional Law § 49– waiver of counsel – defendant questioned in accordance with statute – waiver knowing and voluntary**

Where the trial court specifically questions a defendant, who wishes to represent himself, in accordance with G.S. 15A-1242 and determines that defendant has been advised of his right to counsel, is aware of the consequences of his decision to represent himself, and understands the nature of the charges and the permissible punishments, the constitutional requirement that waiver of counsel must be knowing and voluntary has been fully satisfied.

4. **Rape § 6– jury instructions – sexual intercourse not defined – no error**

The trial court in a rape prosecution did not err in its jury charge by substituting the words "sexual intercourse" for the words "carnal knowl-

edge" as required by the statute under which defendant was charged, nor was it error for the court to fail to define sexual intercourse.

5. **Crime Against Nature § 4– unnatural sexual intercourse defined – instructions proper**

In a prosecution of defendant for crime against nature, cunnilingus, the trial court's definition of "unnatural sexual intercourse" in the jury charge was proper and could not have caused the jury to confuse cunnilingus with sexual intercourse.

Justice BROCK took no part in the consideration or decision of this case.

DEFENDANT appeals from judgment entered by *Seay, Judge,* at the 17 December 1979 Session of Superior Court, GUILFORD County.

Defendant was charged in three indictments, each proper in form, with rape, robbery with a dangerous weapon, and crime against nature. He pled not guilty to each. The jury found defendant guilty of all charges and he was sentenced to life imprisonment for the rape conviction, twenty to thirty years for the armed robbery conviction, and ten years for the crime against nature conviction. Defendant appeals to this Court from the life sentence imposed for the rape conviction. We allowed his motion to bypass the Court of Appeals on the armed robbery and crime against nature convictions on 18 June 1980.

This case presents the issues of (1) when the constitutional right to counsel in a criminal case requires that substitute counsel be appointed to replace original counsel because a conflict exists between defendant and original counsel and (2) whether compliance with G.S. 15A-1242 satisfies the constitutional requirement that waiver of counsel be "knowing and voluntary."

*Attorney General Rufus L. Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*Joel G. Bowden for defendant.*

CARLTON, Justice.

I.

At trial, the State presented evidence tending to show that on 28 September 1979 at approximately 1:45 p.m. Marilyn Ozan was working alone at The Mailing Service in Greensboro, North

Carolina. At approximately 1:45 p.m., a black male whom Ms. Ozan identified as defendant, entered the building and asked if it were The Mailing Service. Ms. Ozan replied that it was, and the man attacked her. He grabbed her around the neck with his arm and held a hunting knife to her throat. Defendant told her that he wanted all her money and that he would kill her if she screamed. Ms. Ozan was walked back into a room where the mail bags were kept and was forced to lie face-down on the floor. Defendant cut the ropes off a mail bag, tied her feet and hands, and put a mail bag over her head. He then opened Ms. Ozan's purse and emptied it out on the floor of the mail bag room. After defendant took the money from Ms. Ozan's purse, he sexually assaulted her by performing cunnilingus and raping her. After he finished, he left without further incident.

Ms. Ozan worked herself free from the ropes, called the police, and gave a description of her assailant. Defendant was picked up a few minutes later about seven blocks from The Mailing Service. His appearance matched the description given by Ms. Ozan.

A police detective showed Ms. Ozan seven pictures of black males. She was not told that her attacker was in the group. The pictures were placed in front of her one at a time. When defendant's picture was placed before her, she immediately identified him.

The doctor who examined Ms. Ozan at the hospital emergency room testified that she had rope burns on her wrists and that tests revealed recent intercourse.

Defendant's evidence tended to show that he had been at the Guilford County Department of Social Services sometime on the day in question.

## II.

[1] The principal issue raised by this appeal is whether defendant had the constitutional right to have substitute counsel appointed to represent him after his motion to dismiss original counsel was granted.

Defendant was originally represented in this case by an attorney from the Public Defender's Office, Mr. Deno Econo-

mou. Mr. Economou was appointed about one month prior to trial. He filed motions to suppress statements made by and evidence seized from defendant at the time of his arrest. On 6 December 1979 defendant appeared in court and informed the trial judge that he was dissatisfied with his court-appointed counsel:

> MR. THACKER: The defendant moves that he be appointed new counsel or either the defendant makes a motion that he defend his own self.

> COURT: All right. You want me to first deny or appoint new counsel?

> MR. THACKER: Yes, sir.

> COURT: Do you mean somebody in addition to Mr. Deno Economou, or do you want me to get rid of him for you and appoint somebody new?

> MR. THACKER: Get rid of Mr. Deno.

The court inquired into the reason for defendant's dissatisfaction with his counsel. Defendant replied, "The reason is communication between me and the Court-appointed counsel. We can't see no headway with this, you know." When pressed further defendant stated that his counsel didn't understand the questions that defendant wanted presented to the court. The trial court granted defendant's motion to dismiss his counsel and denied his motion to appoint substitute counsel. However, he directed the assistant public defender to remain in the courtroom during trial to assist defendant if requested by defendant.

Defendant claims that the trial judge did not make sufficient inquiry into the conflict between himself and counsel to determine whether there was valid reason for appointment of substitute counsel. Failure to do so, he argues, operated to deprive him of his constitutional right to counsel.

While it is a fundamental principle that an indigent defendant in a serious criminal prosecution must have counsel appointed to represent him, *Gideon v. Wainright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), an indigent defendant does not have the right to have counsel *of his choice* appointed to

represent him.[1] *State v. McNeil,* 263 N.C. 260, 270, 139 S.E. 2d 667, 674 (1965); *accord, State v. Robinson,* 290 N.C. 56, 65-66, 224 S.E. 2d 174, 179 (1976). This does not mean, however, that a defendant is never entitled to have new or substitute counsel appointed. A trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his constitutional right to counsel. *United States v. Young,* 482 F. 2d 993 (5th Cir. 1973); *United States v. Calabro,* 467 F. 2d 973, 986 (2d. Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S. Ct. 1358, 35 L. Ed. 2d 587, *reh. denied,* 411 U.S. 941, 93 S. Ct. 1891, 36 L. Ed. 2d 404 (1973); *see also United States v. Morrissey,* 461 F. 2d 666 (2d. Cir. 1972); *Brown v. Craven,* 424 F. 2d 1166 (9th Cir. 1970); *Bowman v. United States,* 409 F. 2d 225 (5th Cir. 1969), *cert. denied,* 398 U.S. 967, 90 S. Ct. 2183, 26 L. Ed. 2d 552, *reh. denied,* 400 U.S. 912, 91 S. Ct. 128, 27 L. Ed. 2d 152 (1970); *United States v. Grow,* 394 F. 2d 182, 209 (4th Cir.), *cert. denied,* 393 U.S. 840, 89 S. Ct. 118, 21 L. Ed. 2d 111 (1968); *United States v. Gutterman,* 147 F. 2d 540 (2d Cir. 1945); *United States v. Mitchell,* 138 F. 2d 831 (2d. Cir. 1943), *cert. denied,* 321 U.S. 794, 64 S. Ct. 785, 88 L. Ed. 1083 (1944); Annot., 157 A.L.R. 1225 (1945). Thus, when it appears to the trial court that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent *that* defendant, denial of defendant's request to appoint substitute counsel is entirely proper. This Court has held that a disagreement over trial tactics generally does not render the assistance of the original counsel ineffective. *State v. Robinson,* 290 N.C. at 66, 224 S.E. 2d at 179; *see State v. McNeil,* 263 N.C. at 270, 139 S.E. 2d at 674; *cf. United States v. Young,* 482 F. 2d 993. While defendant may have disagreed with his counsel over trial tactics and there may have been some communication problem between them, the record before us discloses no reason for the trial court to have doubted

---

[1]Defendant does not disagree with the principle that an indigent is not entitled to choose his counsel. The State argues that this principle disposes of defendant's claim, but that is not the issue presented by this appeal. The issue here is whether defendant was denied his right to counsel by the trial judge's refusal to appoint substitute counsel.

the assistant public defender's competency as an advocate or suspected that the relationship between the two had deteriorated to such an extent that the presentation of his defense would be prejudiced so as to require the appointment of new counsel, *cf. State v. Gray*, 292 N.C. 270, 282, 233 S.E. 2d 905, 913 (1977). Thus, we hold that a mere disagreement over trial tactics such as this record discloses does not entitle defendant to have new counsel appointed for him. *State v. Robinson*, 290 N.C. at 66, 224 S.E. 2d at 179. The trial court properly denied defendant's motion for substitute counsel.

[2] Defendant next argues that regardless of the apparent nature of the conflict, the trial court should inquire into its basis and that failure to make a detailed inquiry amounts to a *per se* violation of defendant's right to counsel. To this end, defendant requests that we formulate a set of criteria by which a trial court must determine whether a valid conflict exists and that we require the trial courts to make findings of fact to permit appellate review of such decisions. We decline to adopt such an unnecessary and stringent requirement. The right to counsel guaranteed to all defendants in state prosecutions by the fourteenth amendment requires only that defendant receive competent assistance of counsel. Thus, when faced with a claim of conflict and a request for appointment of substitute counsel, the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective. The United States Constitution requires no more. While some situations may indeed require an in-depth inquiry and detailed findings of fact, the conflict in the case *sub judice* is clearly not one of them. The trial court made sufficient inquiry to learn that the conflict here was not such as to render the public defender's assistance ineffective. Having so learned, his failure to inquire further was entirely proper. This assignment of error is overruled.

### III.

We next consider defendant's claim that he was denied his right to counsel to encompass a challenge to the propriety of allowing defendant to take charge of his case.

The right to counsel guaranteed to all criminal defendants by the Constitution also implicitly gives a defendant the right

to refuse counsel and conduct his or her own defense. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Services of counsel cannot be forced upon an unwilling defendant. *Id.; State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972); *State v. Morgan*, 272 N.C. 97, 157 S.E. 2d 606 (1967) (per curiam); *State v. McNeil*, 263 N.C. at 267-68, 139 S.E. 2d at 672; *State v. Bines*, 263 N.C. 48, 138 S.E. 2d 797 (1964). However, the waiver of counsel, like the waiver of all constitutional rights, must be knowing and voluntary, and the record must show that the defendant was literate and competent, that he understood the consequences of his waiver, and that, in waiving his right, he was voluntarily exercising his own free will. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562.

In questioning defendant about his desire to represent himself, the trial court followed the dictates of G.S. 15A-1242 which provides:

A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) Understands and appreciates the consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

G.S. § 15A-1242 (1978). The trial court questioned defendant specifically in accordance with this statue and his responses indicated that he had been advised of his right to counsel, that he was aware of the consequences of his decision to represent himself, and that he understood the nature of the charges, the range of permissible punishment for each and the trial proceedings.

We believe that following the criteria set out in G.S. 15A-1242 for allowing a defendant to represent himself adequately ensures that "[a defendant] knows what he is doing and [that]

his choice is made with his eyes open," *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 242, 87 L. Ed. 268, 275 (1942). Therefore, we hold that compliance with the dictates of G.S. 15A-1242 fully satisfies the constitutional requirement that waiver of counsel must be knowing and voluntary. The trial court acted properly in allowing defendant to represent himself.

## IV.

Defendant next alleges error in the trial court's charge to the jury on the offenses of rape and crime against nature. In its charge on rape the court instructed:

> I charge that for you to find the defendant guilty of first degree rape, the State of North Carolina must prove five things and do so beyond a reasonable doubt:
>
> First, that on the occasion herein, that is September 28, 1979 that the defendant, Robert Lee Thacker, had *sexual intercourse* with Marilyn Ozan.

(Emphasis added.) The charge on crime against nature contained the following:

> I charge for you to find the defendant Thacker guilty of crime against nature, the State of North Carolina must prove beyond a reasonable doubt that the defendant Thacker took part in *an act of unnatural sexual intercourse* with Marilyn Ozan. *Unnatural sexual intercourse includes cunnilingus, and cunninlingus in any penetration, however slight, by the mouth or tongue of one person into the female sex organ of another.*

(Emphasis added.)

Defendant contends that the court's failure to define "sexual intercourse" in the charge on rape was prejudicial error for two reasons: (1) "sexual intercourse" is a "term of art" and, as such, it must be defined, and (2) the court, in contrast, defined "unnatural sexual intercourse" in the charge on crime against nature and, thus, may have caused the jurors to confuse the two terms. We find these contentions to be without merit.

[4] This Court was last confronted with the failure of a trial court to define sexual intercourse in a charge on rape in *State v.*

*Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), *death sentence vacated*, 428 U.S. 902, 96 S. Ct. 3204, 49 L. Ed. 2d 1206 (1976). Justice Huskins, writing for the Court, concluded that failure to define "sexual intercourse" was not error because that term and "carnal knowledge," the statutory definition of rape,[2] were synonymous and that the law did not require that any particular words be used when stating the elements of the offense. *State v. Vinson*, 287 N.C. at 341-42, 215 S.E. 2d at 71-72; *accord, State v. Murry*, 277 N.C. 197, 176 S.E. 2d 738 (1970); *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513 (1958); *State v. Hodges*, 61 N.C. (Phil. Law) 231 (1867). We agree. The statute requires carnal knowledge of a female. The substitution of "sexual intercourse" for carnal knowledge in the charge on rape in no way altered the requirements for conviction of rape. The rape instruction was proper.

[5] We also conclude that the trial judge's defining of "unnatural sexual intercourse" was proper. A "crime against nature," G.S. 14-177 (1969), includes several different sexual acts; defendant was indicted and charged with only one, cunnilingus. The specificity of the indictment bound the State to a single theory for the charge, and the trial court could instruct only on that specific ground. *See, e.g., State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980). The jury could find defendant guilty of a crime against nature only if it found beyond a reasonable doubt that defendant had performed the act charged in the indictment. The definition given "unnatural sexual intercourse" in the charge was proper and could not have caused the jury to confuse cunnilingus with sexual intercourse. This assignment of error is overruled.

V.

On oral argument, defense counsel conceded that the right to counsel was the only real issue on this appeal. We have, however, carefully reviewed the remaining assignments of error and the entire record.

---

[2]The statute under which *Vinson* and this case are brought is former G.S. 14-21 which defined rape as "ravishing and carnally knowing any female of the age of twelve years or more." Law of April 8, 1974, Ch. 1204, s. 2, 1973 N.C. Sess. Law 33 (1974) (repealed 1980). Article 7A of Chapter 14 now covers rape and other sexual offenses. It defines rape as "vaginal intercourse." G.S. § 14-27.2(a) and § 27.3(a) (Cum. Supp. 1979).

Defendant, in his brief, brings forward several evidentiary and procedural challenges. For example, he contends that the district attorney's opening statement contained prejudicial and suggestive remarks which made a fair trial impossible and that several of the State's exhibits were improperly admitted. We have carefully reviewed the record on these points and find his contentions to be without merit. We overrule all remaining assignments of error.

We hold that defendant's right to counsel was not denied him and that he received a fair trial, free from prejudicial error.

No error.

Justice Brock took no part in the consideration or decision of this case.