STATE OF NORTH CAROLINA v. ANTHONY LOAN JONES

No. COA02-1739

(Filed 16 December 2003)

**1. Search and Seizure— consent by car owner—jacket found in car—motion to suppress evidence**

    The trial court did not err in a trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a convicted felon case by denying defendant's motion to suppress the evidence found inside his leather coat that he placed in a car that was searched with the owner's consent because: (1) the car

owner's general consent to the search of his car reasonably included the search of clothing lying on the seats of the car; and (2) the car owner had the authority to consent to a search of his vehicle which encompassed items found lying around in the car such as defendant's jacket, and defendant had no reasonable expectation of privacy in the jacket.

**2. Confessions and Incriminating Statements— oral statement at time of arrest—statement signed by defendant—motion to suppress**

The trial court did not err in a trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a convicted felon case by denying defendant's motion to suppress statements given to law enforcement officers, because: (1) regarding defendant's oral statement at the time of his arrest that he had dope in his possession, the statement was a voluntary spontaneous utterance which was not in response to any question by law enforcement; and (2) regarding defendant's written statement, defendant's testimony does not suggest that he attempted to read the statement but was unable to do so, and the record contains testimony by a deputy that he wrote precisely what defendant said without paraphrasing and that he read the statement aloud as he transcribed defendant's statements.

**3. Firearms and Other Weapons— carrying a concealed weapon—possession of a firearm by a felon—motion to dismiss**

The trial court did not err by denying defendant's motion to dismiss the charges of carrying a concealed weapon and possession of a firearm by a felon based on a gun being found under defendant's jacket, because defendant acknowledged possession of the gun in his statement to police officers.

Appeal by defendant from judgments entered 29 August 2002 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 15 October 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Richard E. Jester for defendant-appellant.*

LEVINSON, Judge.

Defendant (Anthony Jones) appeals from convictions and judgments of trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a convicted felon. For the reasons that follow, we conclude defendant had a fair trial, free of reversible error.

The relevant evidence is summarized as follows: On the night of 4 February 2000, members of the Durham County Sheriff's Department took part in a street interdiction operation in Durham, North Carolina. As part of this operation, Detective R. L. Rose and several other officers were driving in the area of Hyde Park Avenue in Durham, when they saw a number of people gathered around a car stopped in the middle of Hyde Park. The car had its engine running and was blocking traffic. The officers parked their van on the side of the street, got out, and approached the group in the center of the street; as they did so, the vehicle drove away and the group dispersed. Defendant, who had been among the group gathered around the car, began walking towards a different car—a red Mustang parked on the side of the street. He went around the rear of the car, opened the passenger door, got into the Mustang's back seat, and shut the door. While Rose and several other officers watched, defendant took off the leather jacket he was wearing and set it on the back seat. He then got out of the car, wearing only a tee shirt despite the freezing (25% F) winter weather.

Meanwhile, the officers had summoned Detective Ricky Keller, the Durham County Sheriff's Department canine handler. After observing defendant's behavior, Deputy J.M. Utley, another officer involved in the operation, asked Detective Keller to have his drug-sniffing dog, 'Marco,' walk around the outside of the Mustang. Marco alerted "very strongly" on the passenger side of the car where defendant had gotten in the car. At around the same time, another man, Robert Jiggetts, emerged from a nearby house. Jiggetts told the officers that the Mustang belonged to his wife, and that he was in charge of the car. Lieutenant Norman Gordon, also of the Durham County Sheriff's Department, asked Jiggetts for permission to search his car; Jiggetts gave his consent to the search, and provided Officer Gordon with his keys. Detective Rose then unlocked the car and retrieved the defendant's jacket from the back seat. Rose found a shoulder holster and handgun under the jacket; he then searched the pockets of the jacket and discovered a digital scale, a butterfly knife, marijuana,

approximately 43 grams of crack cocaine, and over $900 in currency. As these items were removed from the pockets of his jacket, defendant stated that the reason he had gotten into the car was because he had 'dope' in his possession. Defendant was arrested and transported to the law enforcement center by Deputy Utley. At the law enforcement center, he was informed of his *Miranda* rights, signed a waiver, and agreed to make a statement. Defendant dictated his statement to Deputy Utley, who transcribed defendant's words while reading them aloud. After writing the statement, Deputy Utley gave it to the defendant. The defendant looked over the statement, then signed it. In his statement, defendant acknowledged that he had money, a gun, and marijuana in his coat when he put it in the car; however, he denied ownership of the cocaine or scales.

On 15 May 2000 defendant was indicted for trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a convicted felon. Following a jury trial, defendant was convicted of all charges. He received an active sentence of 35 to 42 months for the cocaine and marijuana charges, and a consecutive sentence of 12 to 15 months for the remaining offenses. From these judgments and convictions, defendant appeals.

[1] Defendant presents three arguments on appeal. He argues first that the trial court erred by denying his motion to suppress the evidence found inside his leather coat. We disagree.

The Fourth Amendment to the U.S. Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *State v. Barnes*, 158 N.C. App. 606, 609, 582 S.E.2d 313, 316-17 (2003) (citation omitted).

Under the Fourth Amendment, "[as a] general rule, a warrant supported by probable cause is required before a search is considered reasonable. The warrant requirement is 'subject only to a few specifically established and well-delineated exceptions[.]' " *State v. Woods*, 136 N.C. App. 386, 390, 524 S.E.2d 363, 365 (2000) (quoting *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, (1967)). "Consent, however, . . . [is] excepted from the warrant requirement,

and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *State v. Barden*, 356 N.C. 316, 340-41, 572 S.E.2d 108, 125 (2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973)).

In the present case, defendant concedes that the law enforcement officers had Jiggetts' consent to search the vehicle where he had left his coat. He contends, however, that Jiggetts' giving general consent to search the vehicle did not entitle the officers to search the coat on the back seat. Defendant asserts that he retained a reasonable expectation of privacy with respect to his coat, even after leaving it in Jiggetts' car, and that Jiggetts did not have authority to consent to a search of his jacket. On this basis, defendant argues that without *defendant's* consent, the search of his jacket violated his rights under the Fourth Amendment. We do not agree.

The United States Supreme Court has held that general consent to the search of an automobile, given without any limitations placed on its scope, encompasses the search of "a closed container found within the car that might reasonably hold the object of the search." *Florida v. Jimeno*, 500 U.S. 248, 249, 114 L. Ed. 2d 297, 301 (1991) (the "Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile"). The Court rejected the argument that, after receiving general consent to search a vehicle, the police nonetheless must obtain specific permission to search each container inside the car:

> Respondents argue . . . that if the police wish to search closed containers within a car they must separately request permission[.] . . . [W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. . . . A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.

*Id.* at 252, 114 L. Ed. 2d at 303. Our Court cited *Jimeno* in *State v. McDaniels*, 103 N.C. App. 175, 188, 405 S.E.2d 358, 366 (1991), noting that "a police officer may now search a closed container found in a vehicle, where the officer has the suspect's general consent to search and the officer might reasonably believe the container holds the

object of the search." (citing *Florida v. Jimeno*, 500 U.S. 248, 114 L. Ed. 2d 297 (1991), and *California v. Acevedo*, 500 U.S. 565, 114 L. Ed. 2d 619 (1991)). *See also State v. Castellon*, 151 N.C. App. 675, 681-82, 566 S.E.2d 696, 700 (2002) ("defendant gave general consent to search the vehicle, which allowed the officers to search the trunk of the car"). In the instant case we conclude that Jiggetts' general consent to the search of his car reasonably included the search of clothing lying on the seats of the car.

We also reject defendant's argument that Jiggetts could not consent to a search of defendant's coat after defendant left it lying on the back seat of his car. "[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it . . . may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50 (1974). *Matlock* was cited by the North Carolina Supreme Court in *State v. Garner*, 340 N.C. 573, 592, 459 S.E.2d 718, 728 (1995). The defendant in *Garner* moved to suppress evidence taken from his jacket, which he had left in another person's house. This third party consented to the search of her house, where police found defendant's jacket. Defendant argued that the third party did not have the authority to consent to a search of his personal belongings. The Court disagreed and, citing *Matlock*, upheld the trial court's conclusion that the "defendant had no reasonable expectation of privacy in the jacket . . . lying in a pile of clothes." Similarly, in a federal case from another jurisdiction, *United States v. Davis*, 967 F.2d 84, 88 (2d Cir. 1992), the defendant argued that the owner of a car lacked authority to consent to a search of defendant's luggage. The Court held:

> [Defendant's] argument, however, ignores the 'assumption of the risk' approach adopted in *United States v. Matlock, supra*: "The underpinning of third-party consent is assumption of risk. One who shares a house or room or auto with another understands that the partner, may invite strangers[, and that his] privacy is not absolute, but contingent in large measure on the decisions of another. Decisions of *either* person define the extent of the privacy involved, a principle that does not depend on whether the stranger welcomed into the [area] turns out to be an agent or another drug dealer.

(quoting *United States v. Chaidez*, 919 F.2d 1193, 1202 (7th Cir. 1990)). Although not binding on this Court, we find this analysis per-

suasive. *See also Frazier v. Cupp*, 394 U.S. 731, 740, 22 L. Ed. 2d 684, 694 (1969) ("[defendant], in allowing [his cousin] to use the bag and in leaving it in his house, must be taken to have assumed the risk that [his cousin] would allow someone else to look inside"). We conclude that Jiggetts had the authority to consent to a search of his vehicle which encompassed items found lying around in the car, such as defendant's jacket. To paraphrase *Garner, id.*, "defendant had no reasonable expectation of privacy in the jacket . . . lying in [Jiggets' car]."

Defendant cites *State v. Cole*, 46 N.C. App. 592, 265 S.E.2d 507 (1980), in support of his argument that the evidence seized from his jacket should be suppressed. However, *Cole* involved a warrantless search of a jacket found inside an automobile in which the search was not supported by either probable cause or by consent from the vehicle's owner. We conclude that *Cole* is not germane to the resolution of the issues presented herein.

On appeal, "[o]ur review of a denial of a motion to suppress is limited to determining whether the trial court's findings of fact are supported by competent evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law are legally correct." *State v. Trapp*, 110 N.C. App. 584, 587, 430 S.E.2d 484, 486 (1993). In the present case, we conclude that the trial court's findings of fact were supported by the evidence. We further conclude that these findings support its conclusion of law, that the police did not violate the defendant's constitutional rights by searching his jacket after obtaining Jiggetts' consent to a search of the vehicle. Having reached this conclusion, we need not address the State's other arguments, that the search might equally be justified on the basis of probable cause or as a search incident to arrest. This assignment of error is overruled.

---

**[2]** Defendant next argues that the trial court erred by denying his motion to suppress statements given to law enforcement officers. Defendant challenges the admission of both (1) an oral statement made at the time of his arrest, and (2) a statement taken by Officer Utley at the law enforcement center, which was reduced to writing and signed by the defendant. He argues that both of these statements should be suppressed. We disagree.

Regarding the oral statement, Detective Rose testified that when he removed drugs and other items from the pockets of defendant's jacket, the defendant remarked that the reason he had gotten into the

car was that he had 'dope' in his possession. Defendant argues on appeal that the statement was "not voluntary" because it was uttered when he "had just seen officers grab a coat they knew was his and search it without his permission." Defendant cites no cases in support of his argument that the "environment" of "high pressure" surrounding his arrest rendered his statement involuntary. Moreover, the trial court found that:

. . . .

13. At the time that Det. Rose found the items in the coat, the Defendant . . . made a spontaneous utterance that the reason he got into the car was because he had the dope on him. This utterance was not in response to any question, and Det. Rose did not ask Defendant any questions.

Based on this finding of fact, the trial court concluded that defendant's oral statement "was a voluntary spontaneous utterance which was not in response to any question by law enforcement[.]" We conclude that the trial court's finding of fact was supported by competent evidence, and supports its conclusion of law. We further conclude that the trial court did not err by overruling defendant's motion to suppress this oral statement.

Regarding his written statement, the trial court found that:

. . . .

14. After his arrest, the Defendant was brought to the Durham County Sheriff's office where he was read his Miranda rights by Deputy Utley. Defendant signed a Miranda rights form and gave a written statement to Deputy Utley, which he signed after Deputy Utley wrote it for him.

On this basis, the trial court concluded that:

2. The Defendant was properly informed of his Miranda rights . . . stated that he understood them, and made a voluntary, knowing, and intelligent waiver of those rights.

3. The written statement signed by the Defendant is a true and accurate statement that was provided by the Defendant to Deputy Utley.

We conclude the trial court's finding of fact is supported by ample evidence, and supports its conclusion of law. Defendant, however, argues on appeal that his written statement must be suppressed

because "it differed dramatically from what he told the officer." Defendant contends that he was unaware of the difference between what he said and what Deputy Utley wrote down because he "cannot read or write." This argument is without merit.

Defendant testified that he was in school until the tenth grade, when he left to join the Job Corps. Moreover, on cross-examination, defendant <u>denied</u> telling Deputy Utley he was illiterate:

PROSECUTOR: But you're indicating that you don't read and write?

DEFENDANT: I can't read and write that well.

PROSECUTOR: Excuse me. Maybe that's where I—

DEFENDANT: That's what I told him. <u>I didn't say I can't read and write; I can't read and write that well.</u>

PROSECUTOR: So when Deputy Utley handed you back that statement, even though you can't read or write well, you should have been able to at least understand parts of it, correct?

DEFENDANT: Understand what?

PROSECUTOR: Your statement that you made to him.

DEFENDANT: Understand what? No, <u>when he turned it to me, I immediately signed it, and trusted him that he was writing what I was saying.</u> . . .

(emphasis added). Thus, defendant's testimony does not suggest that he attempted to read the statement but was unable to do so. Additionally, the record contains testimony by Deputy Utley, that he wrote precisely what defendant said without paraphrasing, and that he read it aloud as he transcribed defendant's statements.

"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000)). "It is the trial court's duty to resolve any conflicts and contradictions that may exist in the evidence." *State v. Johnson*, 322 N.C. 288, 293, 367 S.E.2d 660, 663 (1988) (citation omitted).

We conclude that the trial court's findings are supported by the evidence, and that these findings support its conclusions of law

regarding both the written and oral statement. Accordingly, we hold that the trial court did not err by denying defendant's motion to suppress his statements. This assignment of error is overruled.

---

[3] Finally, defendant argues that the trial court erred by denying his motion to dismiss the charges against him for insufficiency of the evidence. Defendant was convicted of six separate criminal offenses; however, he argues the sufficiency of the evidence only with regards to the firearms charges. Accordingly, we confine our analysis to whether there was enough evidence presented to submit to the jury the charges of carrying a concealed weapon and possession of a firearm by a felon.

Upon a defendant's motion to dismiss for insufficient evidence, the trial court "must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992) (citation omitted). "If substantial evidence of each element is presented, the motion for dismissal is properly denied. 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *State v. Shelman*, 159 N.C. App. 300, 304-05, 584 S.E.2d 88, 92 (2003) (quoting *State v. Cross*, 345 N.C. 713, 717, 483 S.E.2d 432, 434 (1997)). Moreover, in its ruling on a motion to dismiss, "the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002).

In the instant case, defendant argues that the evidence was insufficient to establish either his actual or constructive possession of the gun found under his jacket. However, in his written statement defendant stated that "[t]he cops searched the car and found my coat. I had some herb, a gun—and a gun in my coat." As discussed above, we have concluded that the trial court did not err by admitting this statement. Because defendant acknowledges his possession of the gun in this statement, it effectively disposes of his argument that there is no evidence of possession. This assignment of error is overruled.

For the reasons discussed herein, we conclude that the defendant had a fair trial, free of prejudicial error. Accordingly, defendant's convictions and sentences are

Affirmed.

Judges MARTIN and STEELMAN concur.