STATE OF NORTH CAROLINA,
v.
IRVIN LEE BROUSSARD.
No. COA09-1197.
Court of Appeals of North Carolina.
Filed March 16, 2010.
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Grady L. Balentine, Jr., for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant.
WYNN, Judge.
"[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Georgia v. Randolph, 547 U.S. 103, 120, 164 L. Ed. 2d 208, 226 (2006). In this case, police entered Defendant's home while he was on the front porch expressly refusing to consent to their entry. Although Defendant's co-tenant consented to entry, Randolph requires us to hold that the officers were not justified in conducting the search and therefore the fruits of the illegal search should have been suppressed.[1]
On 17 July 2008, six uniformed officers of the Durham Police Department responded to an anonymous complaint alleging that drugs were being sold at the home of Defendant Irvin Lee Broussard. The officers were dispatched to conduct a "knock and talk" investigation. Upon their arrival at Defendant's residence, officers positioned themselves at the rear of the house while Officers Polk and Sexton knocked on the front door. A voice from inside asked, "Who is it?" Officer Polk responded, "It's the police."
Defendant came to the door with a dog and the officers asked if they could come inside and talk. Defendant told them that he had to confine his dog, then he shut the door and locked it. After five minutes, Defendant had not returned, so Officer Polk knocked on the door again. Defendant returned to the door a few minutes later and, according to Officer Polk, was sweating profusely. Officer Polk asked Defendant if the officers could come inside and talk for a second. Defendant said "no." Defendant instead stepped outside onto the porch and closed the screen door behind him, though he left the inner door open.
Defendant's co-tenant, Fannie Burnette, came to the door and the police asked her if they could come inside to talk to her. According to Officer Polk she replied, "That's fine, come on in." Shortly thereafter, Corporal Grissom joined Officers Polk and Sexton on the porch and was told that consent had been obtained to search the residence.
Officers Polk and Grissom entered the front foyer while Officer Sexton remained on the front porch with Defendant. Once inside, Officers Polk and Grissom saw a shotgun leaning against the wall in plain view. Officer Polk secured the weapon and told the other officers that there was a gun in the house, at which point Officer Sexton entered the residence. Defendant was placed in handcuffs for safety reasons. While Officer Grissom remained with Ms. Burnette in the living room and Officer Greathouse stayed on the porch with Defendant, the other officers began conducting a "protective sweep" of the house for other people or weapons that might pose a danger to them.
During the "protective sweep" Officer Sexton seized a rifle found in plain view. Officer Sexton secured both firearms and stood inside the front door. While the search continued, with the Defendant still in handcuffs, Officer Greathouse and Defendant "talked about the guns." Defendant said the guns were used for safety and hunting. Without being first informed of his rights, Defendant was asked where he got the guns, whether he had a criminal record, whether he was a convicted felon, and whether he was on probation. Defendant responded that he had lawfully purchased the guns, was a convicted felon, and was not on probation.
While this questioning was taking place, the "protective sweep" was still ongoing. One of the officers noticed a dresser drawer opened approximately eight inches and saw that it contained what appeared to be a controlled substance. A field test identified the substance as crack cocaine. In a trash can in the kitchen, officers found plastic bags containing a white residue that appeared to be cocaine residue.
When the search was completed, the officers contacted Durham police communications and confirmed Defendant's status as a convicted felon. A database search confirmed that the guns were not reported stolen. The officers seized the two guns, the crack cocaine, and the plastic bags found in the trash can. Defendant and Ms. Burnette were arrested and taken to the police station in separate patrol cars. Defendant made no statements while in transit.
At the station, Defendant remained with the officers while they packaged the evidence and filled out a booking sheet. After this booking process was complete, Defendant was advised of his rights. Defendant signed a Miranda form, indicating that he understood his rights and agreed to waive them in order to speak with the officers. During questioning, Defendant admitted that the guns and drugs belonged to him. Defendant wrote a statement saying that the guns and cocaine were his.
Defendant was charged with felonious possession of cocaine, possession of drug paraphernalia, possession of a firearm by a felon, and being a habitual felon at the time of the alleged offenses. Defendant filed separate motions to suppress all physical evidence and any oral or written statements made by him, arguing that all were fruits of an unlawful search conducted in violation of his constitutional rights. The trial court ruled that the officers legally entered the residence because they were granted permission to enter by Ms. Burnette. The motion to suppress was granted with regard to the plastic bags found in the kitchen on the grounds that their use as drug paraphernalia was not readily apparent. The trial judge also granted the motion to suppress statements made by Defendant while handcuffed on his front porch prior to being informed of his Miranda rights. However, Defendant's motion to suppress was otherwise denied.
Reserving his right to appeal, Defendant pled guilty to possession of a firearm by a felon and to being a habitual felon at the time of the offense. On 16 April 2009, the trial court entered judgment imposing a prison sentence of 93 to 121 months. Defendant appeals, contending that the trial court erred by partially denying his motion to suppress. Specifically, Defendant argues that the physical evidence and statements sought to be suppressed were the fruits of an unconstitutional search of his home.
"The standard of review to determine whether a trial court properly denied a motion to suppress is `whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law.'" State v. Young, 186 N.C. App. 343, 347, 651 S.E.2d 576, 579 (2007)(quoting State v. Cockerham, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699, disc. rev. denied, 357 N.C. 166, 580 S.E.2d 702 (2003)). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence." State v. Campbell, 359 N.C. 644, 661, 617 S.E.2d 1, 12 (2005). We review the trial court's conclusions of law de novo. State v. Edwards, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648, disc. review denied, 362 N.C. 89, 656 S.E.2d 281 (2007).
Searches conducted without a warrant are presumed to be unreasonable and as such warrantless searches violate the Fourth Amendment of the United States Constitution. State v. Logner, 148 N.C. App. 135, 139, 557 S.E.2d 191, 194 (2001).
The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. See State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994). Similarly, the Constitution of the State of North Carolina provides that `[g]eneral warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted.'
State v. Grooms, 353 N.C. 50, 73, 540 S.E.2d 713, 728 (2000)(quoting N.C. Const. art. I, § 20), cert. denied, 534 U.S. 838, 151 L. Ed. 2d 54 (2001). The search of a person's residence without a warrant is particularly problematic because "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people." Randolph, 547 U.S. at 115, 164 L. Ed. 2d at 222 (quoting Minnesota v. Carter, 525 U.S. 83, 99, 142 L. Ed. 2d 373, 386 (1998)(Kennedy, J., concurring)). There are "a few specifically established and well-delineated exceptions" to the general warrant requirement. Katz v. United States, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967). One "jealously and carefully drawn" exception to the warrant requirement permits a warrantless search conducted pursuant to the voluntary consent of an occupant or other person having actual or apparent authority over the premises. Randolph, 547 U.S. at 109, 164 L. Ed. 2d at 218-19 (quoting Jones v. United States, 357 U.S. 493, 499, 2 L. Ed. 2d 1514, 1519 (1958)); see also Illinois v. Rodriguez, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156 (1990). However, the "warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Randolph, 547 U.S. at 120, 164 L. Ed. 2d at 226.
In the case sub judice, the trial court concluded as a matter of law that police officers were "legally inside the residence" because they "received permission to enter the residence" from Ms. Burnette. The State does not contest the fact that Defendant, in contrast, denied the request to enter. Indeed, the trial court found as fact that "defendant did not grant permission [to enter]." A review of the record indicates that in fact Defendant expressly denied a request to enter the premises. Not only did Defendant testify to that effect, but Officer Sexton testified that when an officer asked Defendant for permission to enter "he said, no, and came out onto the porch." Given that Defendant was physically present and had expressly refused consent to enter, the warrantless search was unreasonable even if Ms. Burnette consented to entry. See id.
The State argues that this Court should not subject law enforcement's request to enter a residence to the same scrutiny as a request to search the premises. Specifically, the State contends that Randolph is inapplicable because that case concerned consent to search rather than consent to enter. "However, generally speaking, an intrusion into a residence is a search within the meaning of the Fourth Amendment, for `physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" State v. Barnes, 158 N.C. App. 606, 610, 582 S.E.2d. 313, 317 (2003)(quoting United States v. United States District Court, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764 (1972)); see also Payton v. New York, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653 (1980)("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").
Furthermore, the State's argument ignores the fact that the Court in Randolph reached its conclusion because one co-tenant does not have the "authority to prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders." Randolph, 547 U.S. at 114, 164 L. Ed. 2d at 222. Randolph thus stands for the proposition that when two people living together disagree regarding admission to their common quarters, police cannot justify entry through an appeal to the authority of a single resident.
Here, as in Randolph, the question is whether one co-tenant's consent was sufficient to override a physically present co-tenant's denial of consent when both exercised equal authority over the premises. In accordance with Randolph, we hold that Ms. Burnette's consent to enter the residence was insufficient to override Defendant's denial of entry. Therefore, the court's conclusion that the police officers were "legally inside the residence" was erroneous, as it was based on a misapplication of the law.
Having found that the officers were not operating within an exception to the general warrant requirement, we next address whether police actions warranted the suppression of evidence obtained during the unconstitutional search of Defendant's residence. "Fourth Amendment rights are enforced primarily through the `exclusionary rule,' which provides that evidence derived from an unconstitutional search or seizure is generally inadmissible in a criminal prosecution of the individual subjected to the constitutional violation." State v. McKinney, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006); see also N.C. Gen. Stat. § 15A-974 (2009) (commanding the suppression of evidence if "[i]ts exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina"). "When evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the `fruit' of that unlawful conduct should be suppressed." Pope, 333 N.C. at 113-14, 423 S.E.2d at 744 (citation omitted).
Defendant argues that the trial court erred by denying the motion to suppress the guns and the crack cocaine seized from Defendant's residence. The trial court concluded that the seizure of both weapons, as well as that of the crack cocaine, was lawful because these items were located in plain view and discovered pursuant to a "protective sweep."
"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." State v. Richards, 294 N.C. 474, 488, 242 S.E.2d 844, 853 (1978) (quoting Harris v. United States, 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069 (1968)). However, because the vantage point from which the officers saw the contraband was only secured through their unlawful entry into Defendant's residence, the physical evidence seized, despite being found in plain view, is inadmissible.
Finally, we must determine whether the trial court's error was prejudicial to Defendant. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2009).
In this case, Defendant's Constitutional rights were violated when police conducted a warrantless search of his residence despite his express refusal of consent to enter. As a result of this unconstitutional search, police found the firearms forming the basis of Defendant's conviction for possession of a firearm by a felon. Furthermore, the State has presented no argument that the denial of the motion to suppress was harmless error. We therefore find that the Defendant was prejudiced by the trial court's error.
Accordingly, the trial court's order denying Defendant's motion to suppress evidence obtained as a result of the unlawful search of his residence is reversed. Additionally, the trial court's 16 April 2009 judgment is reversed and this case is remanded to the trial court for a new trial. See State v. Allen, 332 N.C. 123, 129, 418 S.E.2d 225, 229 (1992) (remanding to trial court for new trial when trial court erred by denying the defendant's motion to suppress evidence).
New trial.
Chief Judge MARTIN and Judge STEPHENS, concur.
Report per rule 30(e).
NOTES
[1] "When evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the `fruit' of that unlawful conduct should be suppressed." State v. Pope, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992).