DILLON, Judge.
Stephen Eugene James ("Defendant") appeals from judgments entered upon jury verdicts finding him guilty of robbery with a firearm, conspiracy to commit robbery with a firearm, and possession of a firearm by a felon. Following the verdicts, Defendant pleaded guilty to the offense of attaining the status of an habitual felon and was sentenced accordingly. Defendant gave notice of appeal in open court.
I. Background
In November 2013, Bryan Reynolds was the victim of a robbery in Mecklenburg County. Mr. Reynolds had listed an "Xbox" gaming console for sale on an internet classifieds website. Mr. Reynolds spoke with a potential buyer responding to the ad and agreed to meet him at a gas station. Mr. Reynolds testified that the caller identification on his phone identified the person as "Stephen James." After arriving at the gas station, Mr. Reynolds showed the potential buyer the gaming console. The two men spoke for several minutes before the potential buyer called to the passenger in his vehicle, "Hey, come look at this." The passenger exited the vehicle with a handgun and walked toward the trunk of Mr. Reynolds' car. Mr. Reynolds stated that the passenger pointed the handgun at him and stated "this is mine," referencing the gaming console. The potential buyer and the passenger then took the gaming console out of Mr. Reynolds' trunk and drove away.
Mr. Reynolds reported the theft to the police. Later, he selected Defendant's photo from a lineup, identifying Defendant with seventy percent (70%) certainty as the passenger who had held the handgun during the robbery.
A detective went to a used electronics store and determined that the store had purchased an Xbox gaming console earlier that day with a serial number matching that of Mr. Reynolds' Xbox. The driver's license given to the store identified the seller of the Xbox as Stephen James.
Based on this information, a warrant was issued for Defendant's arrest. Officers served the warrant at Defendant's girlfriend's residence. After arresting Defendant, the officers searched his girlfriend's bedroom and discovered a handgun under the mattress.
II. Analysis
A. Ineffective Assistance of Counsel
In Defendant's first argument on appeal, he contends that he received ineffective assistance of counsel because his defense counsel failed to move to exclude evidence of the firearm discovered under the mattress. Because we conclude that Defendant has failed to establish that there is a reasonable probability that, but for this failure, the trial result would have been different, we disagree.
In order to successfully assert an ineffective assistance of counsel claim on appeal, a defendant must satisfy both prongs of the two-prong test set forth by our Supreme Court. State v. Gainey , 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002). First, the defendant must show that "counsel's performance fell below an objective standard of reasonableness."Id. Second, the defendant must show that the error committed, whether reasonable or unreasonable, was "so serious that a reasonable probability exists that the trial result would have been different." Id; see also State v. Braswell , 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985).
Here, defense counsel did not move to move to suppress the discovery of the firearm, despite the fact that there was conflicting evidence as to whether Defendant's girlfriend had consented to the search. We need not determine whether Defendant has satisfied the first prong-whether defense counsel's failure to move to suppress fell below an objective standard of reasonableness-because we conclude that Defendant has failed to satisfy the second prong. Specifically, we conclude that there is not a reasonable probability that the trial result would have been different had defense counsel moved to suppress the discovery of the firearm. We reach our conclusion regarding the second prong on two independent grounds, as set forth below.
First , we conclude that there is not a reasonable probability that a motion to suppress would have been granted had it been made.
"[A] defendant challenging a Fourth Amendment violation occurring in the home of another must demonstrate a 'legitimate expectation of privacy, which has two components: (1) the person must have an actual expectation of privacy, and (2) the person's subjective expectation must be one that society deems to be reasonable.' " State v. Barnes , 158 N.C. App. 606, 614, 582 S.E.2d 313, 319 (2003) (citing State v. Wiley , 355 N.C. 592, 602, 565 S.E.2d 22, 32 (2002) ). Our Court has acknowledged that "status as an overnight guest alone is enough to show that [a person] has an expectation of privacy in the home." State v. Sanchez , 147 N.C. App. 619, 627, 556 S.E.2d 602, 608 (2001) (emphasis added) (citing Minnesota v. Olson , 495 U.S. 91, 96-97 (1990) ).
In the present case, an officer testified that Defendant's girlfriend told him Defendant lived in Charlotte but was staying at her home for "a couple of weeks," and that he kept clothes in their shared bedroom. Defendant's girlfriend testified that Defendant had come to stay with her sometime before Thanksgiving and was still living at the home at the time of his arrest in mid-December. The State did not present evidence that would contradict these statements. Therefore, it is clear that Defendant had a reasonable expectation of privacy in his girlfriend's home. Based on the uncontradicted evidence, Defendant was an "overnight guest," and the item Defendant would have sought to suppress was discovered in an area of the home that Defendant occupied regularly.
The State contends that the search was consensual because Defendant's girlfriend gave consent to search their shared bedroom. See State v. Garner , 340 N.C. 573, 592, 459 S.E.2d 718, 728 (1995) ("A third party may give permission to search where the third party possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." (internal marks omitted)). There was conflicting evidence presented at trial regarding whether Defendant's girlfriend gave consent. She testified that officers did not ask for consent. However, an officer testified that in response to a request to search the bedroom, Defendant's girlfriend led the officers from the front porch to the bedroom where the firearm was discovered. However, we need not guess as to how the trial court would have resolved this conflict. During the trial, the court made a finding that "assuming [Defendant] had a constitutional right to privacy in [his girlfriend's] home, [ ] it was overridden by the consent given by [Defendant's girlfriend]." Therefore, given that we know that the trial court believed the officer's testimony regarding the girlfriend's consent to the search, we conclude that there is no reasonable probability that a motion to suppress would have been allowed.
Second , we conclude that Defendant has not met his burden of showing a reasonable probability of a different result at trial even if the trial court had granted a motion to suppress the firearm because of other overwhelming evidence of Defendant's guilt. See Braswell , 312 N.C. at 563, 324 S.E.2d at 249 (discussing the "reasonable probability" standard). Specifically, the victim testified that the perpetrator pointed a firearm at him during the robbery; the victim was seventy percent sure that Defendant's picture was of the perpetrator who pointed the gun at him; Defendant's name appeared on Mr. Reynolds' caller ID when the meeting was arranged to view the Xbox for sale; and a clerk at a local used electronics store stated that on the day of the robbery, Defendant's driver's license was provided by a seller of an Xbox gaming console with a serial number matching that of Mr. Reynolds' stolen Xbox. Accordingly, Defendant has failed to show that he received ineffective assistance of counsel.
B. Request for Substitute Counsel
Defendant's second argument on appeal relates to Defendant's request to have substitute counsel appointed prior to trial. Specifically, Defendant contends that the trial court failed to make an adequate inquiry into the Defendant's reasons for requesting substitute counsel.
Whether the trial court conducted an adequate inquiry into a defendant's request for substitute counsel presents a question of constitutional law, State v. Thacker , 301 N.C. 348, 351-52, 271 S.E.2d 252, 255-56 (1980), and is therefore reviewed de novo . Piedmont Triad Airport Auth. v. Urbine , 354 N.C. 336, 338, 554 S.E.2d 331, 333 (2001).
A trial court is constitutionally required to appoint substitute counsel "whenever representation by counsel originally appointed would amount to [a] denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his constitutional right to counsel." Thacker , 301 N.C. at 352, 271 S.E.2d 255. Generally, disagreement over trial tactics does not render the assistance of original counsel ineffective. State v. Robinson , 290 N.C. 56, 66, 224 S.E.2d 174,179 (1976). Denial of a defendant's request for substitute counsel is thus entirely proper "when it appears to the trial court that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent that defendant[.]" Thacker , 301 N.C. at 352, 271 S.E.2d at 255.
Here, it appears that Defendant disagreed with his defense counsel on trial tactics, the filing of motions, and stated that he had not been given an opportunity to review discovery materials. Defense counsel indicated that he had made the discovery materials available to Defendant on the Saturday preceding his trial, but that they had a disagreement and Defendant had left the office. Despite these issues, the record before us "discloses no reason for the trial court to have doubted [defense counsel's] competency as an advocate or suspected that the relationship between the two had deteriorated to such an extent that the presentation of [Defendant's] defense would be prejudiced so as to require the appointment of new counsel[.]"Id; see also State v. Mason , 337 N.C. 165, 178, 446 S.E.2d 58, 65 (1994) (noting that on appeal, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Defendant's counsel filed several motions, demonstrated a willingness to work with Defendant despite differences of opinion, and appeared to provide adequate representation throughout the trial. Accordingly, this argument is overruled.
NO ERROR.
Report per Rule 30(e).
Judges ELMORE and HUNTER, JR., concur.